UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MOCHEET Q. WHITT, | ) | CASE NO. 1:12CV412 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **REPORT AND RECOMMENDATION** |
| COMMISSIONER OF | ) | **OF MAGISTRATE JUDGE** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Mocheet Q. Whitt ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and REMAND the case for reevaluation and further analysis of Plaintiff's credibility regarding the pain caused by her fibromyalgia.

I.      **PROCEDURAL AND FACTUAL HISTORY**

On April 12, 2007, Plaintiff applied for DIB alleging disability beginning July 9, 2003. Tr. at 110. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008 ("DLI"). Tr. at 112. The SSA denied Plaintiff's application initially and on reconsideration. Tr. at 105-106. Plaintiff requested an administrative hearing, and on May 29, 2009, an ALJ conducted an administrative hearing where Plaintiff testified and was represented by counsel. Tr. at 69-92. On June 25, 2009, the ALJ issued a Decision denying benefits. Tr. at 107-118. Plaintiff filed a request for review, and, on October 6, 2009, the Appeals Council vacated the prior decision and remanded the case to the ALJ to consider new evidence consisting of treatment notes after the DLI; to recontact the medical sources for additional information; to obtain the testimony of a medical expert to clarify the nature and severity of Plaintiff's physical impairments;

and to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base  Tr. at 120-122.  The Appeals Council further directed the ALJ to determine which findings from a prior decision, dated April 28, 2006 remained binding pursuant to *Dennard v. Secretary of Health and Human Services* and *Drummond v. Commissioner of Social Security*.

A supplemental hearing was held on March 5, 2010 where Plaintiff testified and was represented by counsel. Tr. at 41-98. The ALJ accepted the testimony of Plaintiff, John W. Axline, a medical expert, and Kathleen V. Beer, a vocational expert.  On April 27, 2010, the ALJ issued a Decision denying benefits. Tr. at 22-40.  On June 14, 2010, Plaintiff submitted a timely request for review to the Appeals Council.  Tr. at 8.  On July 20, 2011, the Appeals Council denied Plaintiff's request for review.  Tr. at 8-10.

On February 21, 2012, Plaintiff filed the instant suit seeking review of the Decision.  ECF Dkt. #1.  On August 13, 2012, with leave of the Court, Plaintiff filed a brief on the merits.  ECF Dkt. #16. On September 27, 2012, Defendant filed a brief on the merits.  ECF Dkt. #17.  No reply brief was filed.

**II**.      **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from neck, shoulder, hand, and back pain secondary to a motor vehicle accident, which occurred in July 2003, cervical spondylosis, and fibromyalgia, which qualified as severe impairments under 20 C.F.R. §416.920(c). Tr. at 27.  The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§404.1520(d), 404.1525 and 404.1526 ("Listings").  Tr. at 28.  The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §404.1567(a) except as follows: with only occasional bending, stooping, twisting, squatting, kneeling, crawling, climbing, and balancing.  In addition, the ALJ found that Plaintiff was "unable to raising [sic] her left (dominant) arm overhead or use it on a sustained basis for more than two hours and capable of holding things down [sic]." Tr. at 28.  He ultimately concluded that, although she could no longer perform her past work as a cost accountant, night auditor, retail sales person,

telemarketer, and payroll clerk, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, including that of a charge account clerk, food and beverage order clerk, and security guard. Tr. at 32-33. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

### III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to SSI benefits.  These steps are:

1.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.    An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.    If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  Therefore, this

Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

## V.    ANALYSIS

Plaintiff advances three arguments in this appeal. First, Plaintiff contends that the ALJ erred when he did not give controlling weight to the opinion of Plaintiff's treating physician. Second, Plaintiff contends that the ALJ erred in discrediting her testimony. Finally, Plaintiff contends that the RFC fails to match the hypothetical questions posed by the ALJ to the VE.

Plaintiff was 37 years of age on the date of the hearing, and was married with a two-year old child. Tr. at 44-45. She has an Associates' degree in accounting, and prior to a car accident in July of 2003, she worked as a cost accountant. Tr. at 46. Plaintiff, who is left-hand dominant has had trouble with her grip on her left hand. Tr. at 47. She testified that she "loses her grip a lot" and she suffers numbness and tingling on her left side. Although she did not suffer broken bones in the accident, she did suffer a herniated disc at C4-C5. Tr. at 48. She further testified that her shoulder blade is "jammed up into [her] rotator cuff. It's kind of going diagonal and it's starting to rub in there." Tr. at 49. She also has four pinched nerves in her lower back.

Plaintiff underwent treatment by a neurologist, Dr. Brendan Bauer, and a pain management physician, Dr. Gregory Gerber. Tr. at 49. She underwent physical therapy at Advanced Health

twice a week, until her insurance denied coverage for additional visits, which occurred shortly before the hearing.  Her physicians have attempted to resolve her pain with treatment rather than surgery, which is considered a last resort. Tr .at 48.

Plaintiff experiences continuous pain in her left arm and shoulder, neck, and back.  Tr. at 50-51.  Pain medication "take[s] some of the edge off, but it does not completely take away the pain."  Tr. at 50.  She wears an inferential unit (which she has used for five years) and uses a TENS unit (which she has used for seven years), as well as a home traction unit (which she uses fifteen to twenty minutes a day), to treat her pain.  Tr. at 51. As a result of the injuries Plaintiff sustained in the accident, she has difficulty raising her left arm overhead, she has a limited ability to write and has difficulty buttoning a shirt, and lifting a gallon of milk. Tr. at 48-50.

Despite her problems, Plaintiff cares for her child, cooks, cleans, shops for groceries, and washes clothes, although her husband or mother must carry the laundry basket upstairs for her.  Tr. at 53.  If she experiences too much pain while she is performing the foregoing tasks, she sits with a heating pad or takes additional pain medication.  After she relaxes for a little bit, she is able to resume the task.  Tr. at 53.  She occasionally visits her parents or her in-laws, but she cannot sit in a car for long periods of time.  Tr. at 54.

In her first argument, Plaintiff contends that the ALJ erred in not giving controlling weight to the opinion of Dr. Bauer.  Plaintiff argues that she underwent a functional capacity evaluation by a physical therapist, on the referral of Dr. Bauer, on March 3, 2009.  Tr .at 821-823.  The therapist concluded that Plaintiff would be rated in the sedentary physical demand classification, but that it was doubtful that she would tolerate any type of repetitive work task even in the sedentary classification, nor would she be able to tolerate two or more hours in an eight-hour workday in a stand work task utilizing her left upper extremity.  Dr. Bauer concurred with the physical therapist conclusions, writing, "Based upon [Plaintiff's] ongoing neurological difficulties I do agree that [Plaintiff] is operating at the less than sedentary level, and will not be able to tolerate any ongoing work on a day to day basis. Tr. at 829.

The ALJ gave little weight to Dr. Bauer's opinion summarily stating that he gave minimal weight to "all treating physicians and other treating source opinions, including recent records and

-5-

opinions which postdates the December 30, 2003 the date last insured[1]" as they "are inconsistent with the medical findings and opinion of the medical expert." Tr. at 31. The ALJ gave "more significant and controlling weight to the testimony and opinion of [Dr. Axline], based upon his review of the claimant's entire medical history, including physical examinations, objective clinical studies, and functional limitations, and are [sic] well as documents in the record." Tr. at 31.

Dr. Axline provided the following analysis of the medical record in this case at the hearing. Plaintiff was diagnosed with left brachial plexopathy, secondary to an automobile accident on July 8, 2003. However, the MRI of her surgical spine revealed no evidence of fracture or spinal cord damage, change in T2 signal, or Chiari malformation. Likewise, her neurological examination on September 26, 2003 revealed that her sensory, reflexes, and motor strength were normal, with the exception of give-away weakness of the left deltoid, biceps, and tricepps, but no sensory loss was noted. According to Dr. Axline, Plaintiff's treating physician, Dr. Healy, was not impressed with the C5-C6 level as having any significant abnormal changes. In fact, on January 7, 2004, Plaintiff was cleared from any neurological perspective by Dr. Healy.

Dr. Axline further observed that Plaintiff's MRI dated December 30, 2004,was normal, as was the EMG nerve conduction examination on the left upper extremity conducted on March 7, 2005. Specifically, the tests showed no evidence of a left cervical motor radiculopathy. On July 7, 2006, Plaintiff's treating neurologist, Samuel W. Samuel, M.D., reported that Plaintiff's motor and sensory examinations were normal. Dr. Axline testified that there are no clinical findings at the C7 level anywhere in the record. Dr. Axline further testified that the consultative examination conducted on June 21, 2007 demonstrated that Plaintiff had a full range of motion with no tenderness. Additional testing in 2007 and 2008 yielded consistently normal results.

During the period from February 16, 2009 to September 8, 2009, Plaintiff's neurological examinations established that her shoulder strength was five out of five. At an examination conducted at Advanced Health Rehabilitation on March 3, 2009, Plaintiff's cervical range of motion

---

[1]The DLI is December 31, 2008.

test revealed a ten degree loss of motion on the left side with bending and turning, but otherwise yielded normal results.  Likewise, her grip testing results were normal.

Based upon the foregoing evidence, Dr. Axline concluded that left brachial plexopathy was not confirmed by any positive objective medical findings in the record, and that the changes noted at the C5-6 level did not necessarily cause any significant symptoms that would require cervical disc surgery.  Likewise, Dr. Axline testified that objective testing revealed that Plaintiff could walk twenty minutes on a treadmill without difficulty, and that her mild radiculopathy produced no significant physical limitations.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544.   A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).  If  that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.  *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999).  Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Here, the opinion of the treating physician was not afforded controlling weight because his opinion was not consistent with the objective medical evidence.  See *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir.2003); 20 C.F.R. §§404.1527(d), 416.927(d). The ALJ's adoption of the medical expert's opinions and reasoning was based on evidence that "a reasonable mind might accept as adequate to support a conclusion" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.2007) (internal quotation marks and citation omitted)). Where an ALJ is faced with conflicting evidence as to the severity of Plaintiff's functional limitations and their cause, he is permitted to consider the expert testimony to assist in understanding and reconciling the medical evidence of the record.  *Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 921 (6th Cir.2011) (finding ALJ did not err in failing to give controlling weight to a treating physician where ALJ relied on a medical expert's hearing testimony, which cast doubt on treating physician opinion)).  Accordingly, the ALJ did not err when he rejected Dr. Bauer's opinion regarding Plaintiff's ability to perform full-time work.

Turning to Plaintiff's second argument, an ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence. *Walter,* 127 F.3d at 531.  "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir.2001), quoting *Myers v. Richardson*, 471 F.2d 1265,

-8-

1267 (6th Cir.1972).   Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence.  *Rogers,* 486 F.3d at 249.

The social security regulations establish a two-step process for evaluating pain.  *See* 20 C.F.R. § 416.929.  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.  *Id.; Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Servs.* 801 F.2d 847, 853 (6th Cir. 1986).  Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms.  *See id.*  Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p.  *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors.  *Felisky*, 35 F.3d at 1039-40.  Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility as to pain should accord great deference to that determination.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993).  Nevertheless, an ALJ's

-9-

assessment of a claimant's credibility as to pain must be supported by substantial evidence. *Walters*, 127 F.3d at 531.

On May 13, 2008, Dr. Bauer indicated that Plaintiff's tingling and numbness in her hands and arms may be related to fibromyalgia because she had "significantly elevated fibromyalgia markers." Tr. at 728. Dr. Bauer further remarked that he intended to prescribe Lyrica when Plaintiff was no longer breastfeeding.  On February 16, 2009, Dr. Bauer acknowledged that Plaintiff had "multiple trigger points that do meet ACR criteria for fibromyalgia."  Tr. at 784.

Fibromyalgia "is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.' "  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 n. 3 (6th Cir.2007) (quoting Stedman's Medical Dictionary for the Health Professions and Nursing at 541 (5th ed.2005)).  Diagnosing fibromyalgia involves "observation of the characteristic tenderness in certain focal points, recognition of hallmark symptoms, and 'systematic' elimination of other diagnoses." *Rogers*, 486 F.3d at 244 (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir.1988)). CT scans, X-rays, and minor abnormalities "are not highly relevant in diagnosing [fibromyalgia] or its severity."  *Id.*; see also *Preston*, 854 F.2d at 820. "[P]hysical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion".  *Id.* at 818.

The analysis set forth in Social Security Ruling 96-7p is particularly relevant where a claimant has been diagnosed with fibromyalgia.  "Opinions that focus solely upon objective evidence are not particularly relevant" due to the "the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia."  *Rogers*, 486 F.3d at 245.  Cases involving fibromyalgia "place[ ] a premium . . . on the assessment of the claimant's credibility."  *Swain*, 297 F.Supp.2d at 990.  This is because "unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."  *Rogers*, 486 F.3d at 243. "Nonetheless, a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits ...."  *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir.2008) (emphasis in original). Accordingly, in cases involving fibromyalgia an ALJ must assess Plaintiff's credibility

-10-

and "decide ... if the claimant's pain is so severe as to impose limitations rendering her disabled." *Swain*, 297 F.Supp.2d at 990.

The Sixth Circuit has recognized that "disability claims related to fibromyalgia are related to the symptoms associated with the condition – including complaints of pain, stiffness, fatigue, and inability to concentrate– rather than the underlying condition itself." *Rogers*, 486 F.2d at 247, citing 20 C.F.R. § 419.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992)(subjective complaints of pain may support a disability claim). Further, "given the nature of fibromyalgia, where subjective complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers*, 486 F.2d at 248.

However, the ALJ must apply the proper procedural standards in making such decisions. "Some people may have a severe case of fibromyalgia as to be totally disabled from working but most do not, and the question is whether claimant is one of the minority." *Vance,* 260 Fed. App'x at 806, citing *Sarchet,* 78 F.3d at 306-307.

Despite the fact that the ALJ characterized Plaintiff's fibromyalgia as a severe impairment, he did not address the diagnosis in his analysis, nor did he discuss the credibility of her testimony with respect to disabling pain.  Here, the ALJ's disability determination turned completely on the lack of objective medical evidence in the record to establish disabling pain.  While a lack of objective evidence in the record  is a sufficient reason to reject a treating physician's opinion of a claimant's ability to perform full-time work, an ALJ may not rely solely upon a lack of objective evidence where fibromyalgia has been diagnosed.  Here, the lack of objective evidence of pain (in addition to focal point testing) actually prompted the fibromyalgia diagnosis.  Accordingly, Plaintiff's second argument has merit, as the ALJ failed to properly assess her credibility as it relates to her subjective symptoms of fibromyalgia.

## VI.   CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and REMAND the case for reevaluation and further analysis of Plaintiff's credibility regarding the pain caused by her fibromyalgia.

DATE: January 3, 2013

                                        ____/s/George J. Limbert_____
                                        GEORGE J. LIMBERT
                                        UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).